UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-cv-61075-Moreno/Seltzer

MITZY BATISTA,

       Plaintiff,

v.

SOUTH FLORIDA WOMAN'S
HEALTH ASSOCIATES, INC.,
EDWARD D. ECKERT,

       Defendants.
_____/

**PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE
AND MOTION FOR RECONSIDERATION
OF PLAINTIFF'S MOTION TO APPROVE SETTLEMENT**

Plaintiff, Mitzy Batista, by and through the undersigned counsel, hereby responds to the Court's Order to Show Cause [DE 26] why Plaintiff's case should not be dismissed because the Court granted Defendants' motion to deposit $479.03 into the Court registry, and in support states the following:

**I.    Introduction**

From this case's inception, Defendants have sought to avoid paying Plaintiff's reasonable fees. Towards that end, Defendants have protracted this litigation, and caused both the Court and the undersigned to expend more time and resources than what would have otherwise been necessary. Defendants cannot simply cause Plaintiff's case to be dismissed by tendering unpaid wages into the court registry. The parties previously agreed to an enforceable settlement that provided Plaintiff 100% of her unpaid minimum wages without compromise, 100% of Plaintiff's liquidated damages without compromise, 100% of Plaintiff's costs without compromise, and consented to the Court's determination of Plaintiff's reasonable attorney's fees. Absent the Court's

1

approval of the parties' settlement, Plaintiff is entitled to have a judgment be entered in her favor and against Defendants.

**II.    Response to Court's Order to Show Cause: Plaintiff's Claims Are Not Moot and Should Not Be Dismissed.**

Defendants merely tendering $479.03 into the court registry does not moot Plaintiff's claims and does not offer Plaintiff full relief. "Defendants cannot simply pay the full claim, including liquidated damages, and in so doing, avoid liability altogether for Plaintiff's attorney's fees and costs…" *Fernandez v. Andy Iron Works, Inc.*, 13-CV-24477, 2014 WL 3384701, at *3. Absent a settlement approved by the Court, Plaintiff is entitled to a judgment in her favor and against Defendants, and attorney's fees and costs:

> The Eleventh Circuit has held that "settlement offers do not divest the district court of subject matter jurisdiction." *Zinni v. ER Solutions, Inc.,* 692 F.3d 1162, 1164 (11th Cir.2012). In *Zinni,* the defendants attempted to dismiss multiple cases as moot by offering the plaintiffs a dollar more than the maximum allowable award under the Fair Debt Collection Protection Act. *Id.* at 1163. The defendants also offered unspecified attorney's fees and costs, but did not offer to have judgment entered against them. *Id.* at 1164. Each plaintiff rejected the offer, but the defendants still moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3) and the district court granted the motions as to each plaintiff. *Id.* at 1163–64. The Eleventh Circuit reversed, holding that "[b]ecause the settlement offers were not for the full relief requested, a live controversy remained over the issue of a judgment and the cases were not moot." *Id.* at 1167–68. The court specifically recognized that "[a] judgment is important to [the plaintiffs] because the district court can enforce it." *Id.* at 1168. Thus, "[t]he district court erred in concluding [defendants'] offers of settlement were for full relief such that [plaintiffs'] cases were mooted." *Id.*
>
> *3 Courts that may have been inclined to read *Dionne* as allowing defendants who paid full tender to avoid liability for attorney's fees and costs changed course following the *Zinni* decision. *See, e.g., Tapia v. Florida Cleanex, Inc.,* 09–21569–CIV, 2012 WL 7965871 at * 4 (S.D.Fla. Dec.7, 2012) (noting that *Zinni* forecloses the approach that Defendants urge here). This case,

> like *Tapia,* closely resembles *Zinni.* Plaintiff has not conceded that his overtime claim is moot. [ECF No. 16, p. 1]. Plaintiff still wants to pursue a judgment for both claims and obtain the attorney's fees and costs that he believes he is entitled to here. [*Id.*]. The Eleventh Circuit has made clear that when plaintiffs do not concede that their case is moot, or accept a settlement offer (the Plaintiff has done neither here), courts cannot simply dismiss the case with prejudice. *Dionne,* 667 F.3d at 1206, n. 6; *Zinni,* 692 F.3d at 1164.
>
> Accordingly, the Undersigned finds that a live controversy still exists and Plaintiff's overtime claim is **not** moot. Defendants cannot simply pay the full claim, including liquidated damages, and in so doing, avoid liability altogether for Plaintiff's attorney's fees and costs and cause the remaining negligence claim to be remanded to state court. [ECF No. 17, p. 1]. *Zinni* makes clear that settlement offers, even those for the full amount of allowable damages, do not extinguish a live controversy and thereby deprive the court of subject matter jurisdiction. *Zinni,* 692 F.3d at 1164.

*Id.* at *2–3.

> Our decision in this matter addresses a very narrow question: whether an employee who conceded that his claim should be dismissed before trial as moot, when the full amount of back pay was tendered, was a prevailing party entitled to statutory attorney's fees under § 216(b). **It should not be construed as authorizing the denial of attorney's fees, requested by an employee, solely because an employer tendered the full amount of back pay owing to an employee, <u>prior to</u> the time a jury has returned its verdict, or the trial court has entered judgment on the merits of the claim.**

*Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1206 n. 6 (11th Cir.2012) (emphasis added).

### III.   Background

1.   Defendants operate a medical office and employed Plaintiff as a medical assistant.

2.   During the last payroll period of Plaintiff's employment, from January 21 through February 3, 2018, Plaintiff worked approximately 38 hours and was not paid.

3.   On May 13, 2018, Plaintiff filed suit under the Fair Labor Standards Act for $275.50 in unpaid minimum wages, $275.50 in liquidated damages, plus attorney's fees and costs.

4.  On May 25, 2018, Defendants offered $479.03[1] to settle Plaintiff's claims without accounting for fees or costs.

5.  On June 13, 2018, Defendants offered $550.50 plus $400 representing the filing cost; again, Defendants declined to offer any amount to compensate Plaintiff's fees, and further declined to offer any amount to reimburse the $123 in costs incurred to serve Defendants with Plaintiff's Complaint.

6.  On July 10, 2018, Defendant Edward D. Eckert and the undersigned had a telephone conversation to discuss settlement. The settlement offers exchanged during the telephone call were as follows:

    a.  Dr. Eckert offered to pay <u>no fees</u> and demanded that Plaintiff pay her own fees.

    b.  The undersigned offered to resolve Plaintiff's lawsuit for the value of her Statement of Claim, fees of $2,750, and costs of $523.[2]

    c.  Dr. Eckert rejected the offer and, <u>again</u>, offered to pay <u>no fees</u>, and demanded that Plaintiff pay her own fees.

    d.  At that point, realizing how unproductive the discussion was becoming, the undersigned offered to settle Plaintiff's lawsuit for the value of her Statement of Claim plus reasonable fees and costs <u>to be determined by the Court.</u>

    e.  Dr. Eckert responded: ***"I would rather pay a defense attorney $10,000 than allow a court to determine fees and costs."*** Dr. Eckert made no counteroffer.

---

[1] Plaintiff filed suit for $550.50. Defendants contend $479.03 represents Plaintiff's net wages after tax withholdings are subtracted from her last paycheck.

[2] This amount does not represent all fees incurred through the moment that offer was made but, instead, was inclusive of the estimated additional time the undersigned would be required to incur if the case settled at that time including but not limited to drafting and/or revising a settlement agreement, reviewing the agreement with Plaintiff, and seeking the Court's review and approval of the settlement agreement.

    f. Solely in an effort to avoid further litigation and bring this matter to rest, the undersigned then offered to settle Plaintiff's lawsuit for the value of her Statement of Claim plus costs and <u>compromised fees of $2,000.</u>

    g. Dr. Eckert did not accept the offer. Instead, Dr. Eckert said he needed until 12:00 p.m. the following day to consider the offer.

7. Noon of the following day came and went and Dr. Eckert did not accept the offer.

8. Following the July 10 telephone conversation, Dr. Eckert sent a series of emails that misrepresented what the parties discussed and that disparaged the undersigned personally including:

    a. Dr. Eckert falsely claiming that Plaintiff's initial settlement offer included $3,200 in fees.[3]

    b. Dr. Eckert falsely claiming that Plaintiff's initial settlement offer represented fees that had been incurred up through the July 10 telephone call.[4]

    c. Dr. Eckert falsely claiming that Dr. Eckert's remark—***"I would rather pay a defense attorney $10,000 than allow a court to determine fees and costs."***—was said in response to Plaintiff's first settlement offer instead of Plaintiff's second settlement offer, and misrepresenting what was Plaintiff's first offer.[5]

---

[3] Dr. Eckert's emails sent July 10, 2018 at 1:15 p.m., July 10, 2018 at 1:59 p.m., and July 11, 2018 at 7:26 a.m. Contrary to Dr. Ecker's claims, the undersigned never conveyed a settlement offer that included $3,200 in fees. The undersigned initially offered to resolve Plaintiff's lawsuit for the value of her Statement of Claim, fees of $2,750, and costs of $523.

[4] Dr. Eckert's emails sent July 10, 2018 at 1:15 p.m., July 10, 2018 at 1:59 p.m., and July 11, 2018 at 7:26 a.m. The undersigned never represented that $3,200 (or $2,750) represented Plaintiff's fees incurred up to date through the parties' July 10 telephone call. To the contrary, Plaintiff's initial settlement offer, which included $2,750 in fees, was inclusive of the estimated additional time the undersigned would be required to incur if the case settled at that time including but not limited to drafting and/or revising a settlement agreement, reviewing the agreement with Plaintiff, and seeking the Court's review and approval of the settlement agreement.

[5] Dr. Eckert's email sent July 11, 2018 at 7:26 a.m. Plaintiff's first offer included $2,750 in fees and Plaintiff's second offer was to allow the Court to determine Plaintiff's reasonable attorney's

    d.  Contradicting his prior false statements, Dr. Eckert falsely claimed that the undersigned said he had incurred "9.5 hours drawing up the two page complaint" which, if true, would have totaled $3,325 in fees—not the $3,200 falsely claimed by Dr. Eckert.[6]

9.    On July 11, 2018, Lorice Jamito, a member of the undersigned's staff, sent the following email advising that Dr. Eckert claimed Judge Moreno is his patient and that Judge Moreno will not "be happy" with the undersigned:



---

fees and costs. Dr. Eckert again falsely claimed that Plaintiff's first offer included fees of $3,200, which it did not.
[6] Dr. Eckert's email sent July 11, 2018 at 7:26 a.m.

### IV. This Case Settled

10.  On July 11, 2018, the parties agreed <u>in writing</u> to a settlement. Filed at DE 18-1 are the emails between Dr. Eckert and the undersigned agreeing to a settlement.

11.  The terms of the settlement that were agreed to by the parties are the following:

   a. The parties agree to enter into a mutual general release of all claims.

   b. Defendants agree to pay Plaintiff's unpaid minimum wages and liquidated damages, which total $551.

   c. Defendants agree to pay Plaintiff's costs of $523.

   d. Defendants agree to pay Plaintiff's reasonable attorney's fees, as determined by the Court.

   e. The parties agree to the reservation of the Court's jurisdiction to enforce the terms of this settlement agreement.

   f. In the event this settlement agreement must be enforced, the prevailing party shall be entitled to recover attorney's fees and costs from the non-prevailing party.

   g. All payments shall be delivered to Koz Law, P.A., 320 SE 9th Street, Fort Lauderdale, FL 33316.

12. DE 18-1, p. 3 contains the settlement terms that were agreed to by the parties:

> If you have reconsidered and now desire to settle this case, here's the settlement offer:
>
> 1. The parties agree to enter into a mutual general release of all claims.
>
> 2. Defendants agree to pay Plaintiff's unpaid minimum wages and liquidated damages, which total **$551**.
>
> 3. Defendants agree to pay Plaintiff's costs of **$523**.
>
> 4. Defendants agree to pay Plaintiff's reasonable attorney's fees, as determined by the Court.
>
> 5. The parties agree to reservation of the Court's jurisdiction to enforce the terms of this settlement agreement.
>
> 6. In the event this settlement agreement must be enforced, the prevailing party shall be entitled to recover attorney's fees and costs from the non-prevailing party.
>
> 7. All payments shall be delivered to Koz Law, P.A., 320 SE 9th Street, Fort Lauderdale, FL 33316.

13. DE 18-1, p. 1 contains Dr. Eckert's acceptance of the settlement terms:

> From: DR. EDWARD ECKERT <capdex@comcast.net>
> Sent: Wednesday, July 11, 2018 11:45 PM
> To: Elliot Kozolchyk; eckert r
> Subject: RE: Settlement-Confidential and Privileged
>
> ==I already confirmed that i agree with your offer.==
>
> Stop spinning this case to increase your fees.
>
> ==I agree with your offer Elliot, again.==
>
> Dr. Eckert

### V. The Parties' Settlement is Enforceable

District courts have the inherent power to enforce settlement agreements. *See*, *e.g.*, *Ford v. Citizens and Southern National Bank*, 928 F.2d 1118, 1121 (11th Cir. 1991); *Kent v. Baker, III*, 85 F.2d 1365, 1398 (11th Cir. 1987). "Indeed, the power to implement a settlement agreement between the parties inheres in the district court's role as supervisor of the litigation, and the exercise of that power is entrusted to the court's sound discretion." *South Beach Suncare, Inc. v Sea & Ski Corp.*, 1999 WL 350458, at *6 (S.D. Fla. May 17, 1999). In both federal and state court, settlements are highly favored and will be enforced whenever possible. *See, e.g, Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994 ("We favor and encourage settlements in order to conserve judicial resources."); *Spiegel v. H. Allen Homes, Inc.*, 834 So. 2d

295, 297 (Fla. 4th DCA 2003) ("Settlement agreements are favored as a means to conserve judicial resources. Courts will enforce them when it is possible to do so.").

In order for a settlement agreement to be enforced, the agreement must also be "sufficiently specific and mutually agreeable on every essential agreement." *Don L. Tullis & Assocs. v. Benge,* 473 So. 2d 1384, 1386 (Fla. 1st DCA 1985). The execution of a settlement agreement is not a condition precedent to a settlement agreement, but rather a procedural formality. *See Boyko v. Ilardi,* 613 So. 2d 103, 104 (Fla. 3d DCA 1996). This means that "courts look to traditional notions of offer and acceptance, and basic contract law, to determine whether an enforceable contract exists."

Here, Plaintiff's offer was the enumerated settlement terms stated in the undersigned's email sent on July 11, 2018 at 9:20 p.m. *See* DE 18-1, p. 3. Defendants' acceptance, sent via email on July 11 at 11:45 p.m., was clear and unequivocal: "I already confirmed that I agree with your offer." DE 18-1, p. 1. "I agree with your offer Elliot, again." *Id.*

Settlements may exist under Florida law and be enforced without being signed by the parties or even when there is no writing at all. *See Vital Pharmaceuticals, Inc. v. S.A.N. Nutrition Corp.,* 2007 WL 1655421, *6 (S.D. Fla. June 6, 2007) ("Execution of the settlement agreement is not a condition precedent to a settlement agreement, but rather is merely a procedural formality."); *Bonagura v. Home Depot,* 991 So. 2d 902 (Fla. 1st DCA 2008) (holding that the parties reached a valid, binding oral settlement agreement without contingencies); *Boyko v. Ilardi,* 613 So. 2d 103 (Fla. 3d DCA 1993) (finding that the parties entered into a binding oral settlement agreement which was expressly agreed to by both parties).

For example, **a settlement can be reached through a series of email exchanges**. *See Warrior Creek Development, Inc. v. Cummings,* 56 So.3d 915 (Fla. 2d DCA 2011). **Federal courts**

**within the Eleventh Circuit have likewise held that a binding settlement agreement can be reached via email.** *See, e.g., Miles v. Northwestern Mutual Life Ins. Co.,* 677 F. Supp. 2d 1312 (M.D. Fla. 2009); *Terra–ADI Int'l Dadeland, LLC v. Zurich American Ins. Co.,* 2007 WL 2460744 (S.D. Fla. Aug. 24, 2007). The bottom line is that "[a]ll that is required is that the terms be clear, definite and capable of proof." *Reed By & Through Reed v. United States*, 717 F. Supp. 1511, 1517 (S.D. Fla. 1988) (citing *Blum v. Morgan Guaranty Trust Co. of New York,* 709 F.2d 1463 (11th Cir. 1983)). Therefore, "the physical act of signing a document is a mere formality where the parties clearly intend to be bound." *Id*. (citing *International Telemeter Corp. v. Teleprompter Corp.,* 592 F.2d 49 (2d Cir. 1979); *United States v. McInnes,* 556 F.2d 436, 441 (9th Cir. 1977) (holding that the signing of a stipulation is not required to enforce a settlement agreement).

The parties did not expressly require the terms of the settlement to be memorialized in a formal document and executed by the parties in order to be enforceable. There is no legal to do so. *Contrast Club Eden Roc, Inc. v. Tripmasters, Inc.,* 471 So. 2d 1322, 1324 (Fla. 3d DCA 1985) ("Where the parties intend that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time.") and *Long Term Management, Inc. v. University Nursing Care Center, Inc.,* 704 So.2d 669, 674 (Fla. 1st DCA 1997) (finding that the parties did not intend for a settlement to be binding until it was reduced to writing and executed by the parties, based on counsel's comments to the court that the settlement was "subject to [being written] down") *with Miles,* 677 F. Supp. 2d at 1316 (**holding that even though the settlement email contemplated a formal agreement fleshing out the essential terms contained within the email, there was no evidence that the parties did not intend to be bound by the terms recited in the email until and unless the more formal agreement was executed**) and *Vital Pharmaceuticals, Inc.,* 2007 WL 1655421, at *7 (noting that "no objective evidence in the record

provides any indication whatsoever that the parties did not intend to be bound until the agreement was written down and fully executed").

In this case, "there is no evidence to indicate that the parties did not intend to be bound until the agreement was formally documented and fully executed." *Jarvis v. BMW of N. Am., LLC*, 2016 WL 1162324, at *3 (M.D. Fla. Mar. 22, 2016). This is supported by the parties' email exchanges and in Defendant's response where he confirms twice that he agrees to Plaintiff's settlement offer. There is also no evidence that the underlying settlement agreement was contingent on the execution of a physical signature, nor that the agreement be reduced to a formal written agreement.

Accordingly, the undersigned respectfully requests that the Court grant Plaintiff's request for reconsideration, and enter an order (1) approving the terms of the parties' settlement, and (2) reserving jurisdiction to determine Plaintiff's reasonable attorney's fees.

## I. Legal Standard for Motions for Reconsideration

The standard for motions for reconsideration is as follows:

> The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. In particular, there are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. In order to reconsider a judgment there must be a reason why the court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made. Instead, a motion for reconsideration is appropriate where the Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension . . . .Such problems rarely arise and the motion to reconsider should be equally rare. Burger King Corp. v. Ashland Equities, Inc., 181 F.Supp. 2d 1366, 1369 (S.D. Fla. 2002) (internal

citations and quotation marks omitted).

*Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp. 2d 1366, 1369 (S.D. Fla. 2002) (internal citations and quotation marks omitted). For the reasons stated herein, this motion is filed to correct clear error and manifest injustice.

WHEREFORE, Plaintiff requests that the Court (1) find cause why Plaintiff's case should not be dismissed, (2) grant Plaintiff's Motion for Reconsideration, (3) enter an order approving the terms of the parties' settlement, and (4) reserve jurisdiction for the Court to determine Plaintiff's reasonable attorney's fees.

Respectfully submitted,

Koz Law, P.A.
320 S.E. 9th Street
Fort Lauderdale, Florida 33316
Phone: (786) 924-9929
Fax:    (786) 358-6071
Email: ekoz@kozlawfirm.com

Elliot Kozolchyk, Esq.
Bar No.: 74791

## CERTIFICATE OF CONFERRAL

I HEREBY CERTIFY that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

_____
Elliot Kozolchyk, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on August 27, 2018 with the Clerk of Court using CM/ECF along with having served all counsel of record or pro se parties identified on the service list incorporated herein in the manner specified, either via transmission of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notice of Electronic Filing.

_____
Elliot Kozolchyk, Esq.

## SERVICE LIST

Roslyn L. Stevenson, Esq.
*Counsel for Defendants*
Stevenson Law, PL
P.O. Box 800936
Aventura, FL 33280-0936
Tel: (305) 935-9533
Fax: (954) 252-2095
E-mail: roslyn.rlslaw@gmail.com