**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY_____AP_____D.C.

*Mar 2, 2021*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 02, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  19-10133-GG
Case Style: Mitzy Batista v. South Florida Womans Health, et al
District Court Docket No: 0:18-cv-61075-FAM

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 19-10133

_____

District Court Docket No.
0:18-cv-61075-FAM

MITZY BATISTA,

Plaintiff - Appellant,

versus

SOUTH FLORIDA WOMANS HEALTH ASSOCIATES, INC.,
South Forida Woman's Health Association,
EDWARD D. ECKERT,
South Florida Woman's Health Association,

Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: February 01, 2021
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10133
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cv-61075-FAM

MITZY BATISTA,

Plaintiff-Appellant,

versus

SOUTH FLORIDA WOMANS HEALTH ASSOCIATES, INC.,
South Florida Woman's Health Association,
EDWARD D. ECKERT,
South Florida Woman's Health Association,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 1, 2021)

Before WILSON, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Employed for a little over two weeks by defendant South Florida Woman's Health Associates, Inc., Plaintiff Mitzy Batista was fired when she missed a day of work.  She says that she never received her last paycheck, but Defendants claim that they mailed the wages due her to her last known address.  Within a couple of weeks of being fired, Plaintiff met with attorney Elliot Kozolchyk who, three months later, filed suit on her behalf under the Fair Labor Standards Act ("FLSA").  Upon receiving notice of the lawsuit, the owner of the medical practice, defendant Dr. Edward Eckert, offered to send Plaintiff a check for her unpaid wages.  But settlement of the litigation was stymied by Kozolchyk's insistence on receiving attorney's fees in an amount greater than Dr. Eckert thought was reasonable.  Ultimately, the parties settled, leaving to the district court the task of deciding the question of reasonable attorney's fees.

The district court adopted the recommendation of the magistrate judge, who determined that it would be unreasonable to award Kozolchyk any fees, given the latter's conduct before and during the litigation.  Plaintiff has appealed, arguing that the district court abused its discretion in so ruling.  For the reasons explained below, we remand for the district court to make necessary findings of fact and thereafter to issue its ruling.

## I.   BACKGROUND

### A.   Plaintiff's Termination, Post-Termination Communications, and Unpaid Wages

Plaintiff began working for Defendants on January 17, 2018 and was paid at the end of her first pay period via direct deposit.  [Doc. 38-1 at 1]  Shortly thereafter, on February 5, 2018, Plaintiff was fired for missing a day of work.  [*Id.*]  According to Plaintiff's Complaint, Defendants owed her $275.50 for the 38 hours she worked but had not yet been paid at the time she was fired.  [Doc. 1-3]  It is Defendants' position that on the same day she was fired, Plaintiff called their office demanding to be paid immediately.  Defendants assert[1] that Plaintiff was told that her check would be cut and mailed along with the other employees' checks at the end of the normal pay period.  [Doc. 36-9 at 23; Doc. 35-1 at 25]  Defendants say that their records show that just three days after Plaintiff's termination, Defendants cut her a final paycheck in the amount of $479.03.[2]  They assert that the relevant paystub listed the address Plaintiff provided and reflected that the payroll and other taxes were paid.  [Doc. 23 at 1-2]  Defendants allege that

---

[1]  Although Defendants have maintained this position throughout this litigation, they did not file an affidavit confirming the facts asserted.

[2]  The amount on this check does not jibe with the lesser amount of past wages claimed by Plaintiff in this litigation because under the FLSA an employee is entitled only to the minimum wage for hours worked, whereas Plaintiff's salary exceeded the minimum wage rate and the amount on the check Defendants allege to have written apparently reflects the actual pay due Plaintiff, less taxes withheld.  [See Doc. 23 at 2 and Doc. 23-1]

they sent this check to Plaintiff's address and assumed all was well because Plaintiff did not reach out again after her initial phone call and the envelope transmitting the check was not returned to them.  [Doc. 35-1 at 25; Doc. 17 at 2]  Indeed, Defendants allege that all taxes were paid when the check was written, which they say proves that the check was written.  [Doc. 18-3 at 2]

It is Plaintiff's position that she called Defendants' office the day after she was fired and asked for her final paycheck.[3]  [Doc. 38-1 at 2]  Plaintiff stated that the person in charge of payroll informed her she would be paid via direct deposit.  [*Id.*]  Plaintiff says she called back a few days later and was told by the receptionist that defendant Eckert was not going to pay her.  [*Id.*]  Within a couple of weeks, she retained counsel.  Plaintiff affies that she never received a final paycheck from Defendants by mail or otherwise and that her bank records indicate that Defendants never paid her via direct deposit for this final payment, although those records show Defendants had earlier paid her via such a deposit.  It is undisputed that the check allegedly sent to Plaintiff for her unpaid hours of work was never cashed.  [Doc. 38-1 at 2-3; Doc. 23-1 at 1; Doc. 35-1 at 25]

---

[3]  Plaintiff provided an affidavit to this effect but appears not to have made this assertion until after the magistrate judge had issued its report and recommendation denying her request for attorney's fees.  [Doc. 38-1]  That said, and as noted above, Defendants have never provided an affidavit supporting their version of events.

### B.    Plaintiff's Complaint and Defendant Eckert's Attempt to Tender Her Final Paycheck

Plaintiff met with her counsel in this case, Elliot Kozolchyk, on February 23, 2018, which was almost three weeks after she had been fired.  [Doc. 30-2 at 1]  It is undisputed that during the nearly three months that followed, neither Plaintiff nor Kozolchyk ever contacted Defendants to inform them that Plaintiff had not received a final paycheck.  [Doc. 36-2 at 1]  On May 13, 2018, Plaintiff sued Defendants in the Southern District of Florida for violations of the minimum-wage provisions of the FLSA.  [Doc. 1 at 1]  Per §216(b) of that statute, Plaintiffs sought $551 in damages, which included the $275.50 in unpaid wages[4] plus liquidated damages in an equal amount.  [*Id.* at 2; Doc. 1-3 at 1]  Plaintiff also sought attorney's fees and costs, which are typically awarded to plaintiffs who prevail in actions under the FLSA.  [Doc. 1 at 2]

On May 25, 2018, less than two weeks after Plaintiff filed her complaint, Defendant Eckert emailed Kozolchyk an offer to send a replacement check for the amount owed in order to "clear up this misunderstanding."  [Doc. 35-1 at 25]  Defendant Eckert stated that until being served with Plaintiff's complaint, he was unaware that Plaintiff had claimed not to receive the check Defendants had mailed her.  [*Id.*; Doc. 36-9 at 1]  At this point, Kozolchyk's own billing records showed

---

[4]  This figure was arrived at by multiplying the 38 hours of unpaid work by the $7.25 federal minimum hourly wage rate.

that he had expended only 4.3 hours of time on the case.  Kozolchyk did not

respond to Eckert's offer.  [Doc. 30-2 at 1]

### C.   Settlement Negotiations and Disputes Over Plaintiff's Counsel's Attorney's Fees

Approximately two weeks later, on June 13, 2018, the corporate defendant's

counsel followed up with Kozolchyk, expressing both defendants' desire to settle

the case.  [Doc. 36-3 at 1]  Corporate counsel indicated that defendant Eckert

stated that "there was a miscommunication with the payment" and further "that

check payment was offered, but it was not accepted."  [*Id.*]  Counsel stated that the

case could be "easily resolved" by paying Plaintiff the $551 in unpaid wages

sought in her complaint:  that is, the unpaid wages plus an amount equal to those

wages as liquidated damages.  [*Id.*]  Kozolchyk responded that Plaintiff also

wished to settle.  [*Id.* at 2]

Later that day, defendant Eckert himself emailed Kozolchyk an offer to

settle for the entire amount of unpaid wages sought plus court costs, but not her

attorney's fees.  [Doc. 35-1 at 20-21]  Defendant Eckert stated that Plaintiff should,

"in all fairness," pay her attorney's fees out of her settlement.  [*Id.*]  Kozolchyk did

not respond to this email and did not communicate with Defendants for more than

a month.  Then, on July 9, 2018, he rejected defendant Eckert's settlement offer,

stating that "my client cannot agree to shoulder the fees in this case . . . [for] those

are recoverable against the defendants above and beyond the value of the claim."

[Doc. 36-6 at 1]  His delay in responding meant that Defendants were up against a court-ordered deadline to agree to a mediator by July 11.  [*Id*.]

Later that day, Kozolchyk spoke with defendant Eckert over the phone to negotiate the terms of a potential settlement.  Their discussion apparently focused primarily on Kozolchyk's attorney's fees.  As to what was actually said, the subsequent emails between the two reveal their disagreement about the content of the discussion—and deciphering what was actually said is both tedious and problematic for one not a party to the conversation.  It appears that Kozolchyk first sought attorney's fees in the amount of $3,200.  [Doc. 36-8 at 1]  Defendant Eckert balked at that "ridiculous" figure, asking to review Kozolchyk's billing records, which apparently the latter never provided to Eckert during the period of time in which fees were being negotiated.  [Doc. 36-9 at 25; Doc. 18-3 at 2]  According to Kozolchyk, Eckert had allegedly stated that he would rather pay a defense attorney $10,000 than succumb to Kozolchyk's demands, [Doc. 36-9 at 24-25] but Eckert nonetheless agreed to consider Kozolchyk's second offer to resolve the case for $2,000 in attorney's fees.  As to Kozolchyk's claimed attorney's fees, Eckert had emailed Kozolchyk and indicated that absent corroboration of the fees, the claim was "moot."  Nonetheless, Eckert made a counter-offer of $1,100 in attorney's fees.  [Doc. 36-9 at 22]

**D.    Settlement Agreement on July 11, 2018 and Plaintiff's Motion to Approve Settlement**

In any event, Plaintiff argues that on July 11, 2018 the parties entered into a settlement agreement acceded to by defendant Eckert via email.  And it is this agreement that led to the district court's need to resolve attorney's fees.  [Doc. 36-10 at 2-11]  The email agreement provided, in relevant part, that Defendants would pay Plaintiff (1) reasonable attorney's fees, as determined by the district court, (2) unpaid minimum wages and liquidated damages totaling $551, and (3) costs of $523.  [*Id.* at 8]  The parties also agreed to enter into a mutual, general release of all future claims.  [*Id.* at 2]  Asking Kozolchyk to stop churning fees, defendant Eckert confirmed that he agreed to the settlement, stating "I already confirmed that I agree with your offer. . . . I agree with your offer Elliot, again."  [*Id.* at 11-12]  The next day, Kozolchyk filed Plaintiff's Notice of Settlement with the district court.  [Doc. 12 at 1]

On July 13, 2018, attorney Roslyn Stevenson telephoned Kozolchyk and informed him that she had been retained by Defendants, who had been representing themselves *pro se*.  [Doc. 18-2 at 1]  Per Stevenson's request, Kozolchyk sent her a draft of the parties' July 11th settlement agreement.  A few days later, Stevenson denied that the parties had a settlement and later forwarded Kozolchyk a revised settlement, stating, "[i]f this Agreement is not acceptable, then we do not have a settlement."  [Doc. 18-3 at 2; Doc. 18-4 at 1]  Unlike the purported July 11th

settlement, which included a mutual general release and permitted the court to

determine reasonable attorney's fees, Stevenson's proposed settlement exclusively

released the Defendants from future claims and stipulated payments of $1,200 for

both attorney's fees and costs.  [Doc. 18-4 at 1-7]

On July 19, 2018, Plaintiff filed a motion to approve the parties' July 11th

settlement, [Doc. 18 at 1-10], which was promptly denied.  [Doc. 19 at 1]

Additional motions were filed by both parties, and on August 7, 2018, Defendants

were permitted to deposit $479.03 (representing Plaintiff's net unpaid wages) into

the district court's registry.  [Doc. 25 at 1]  The district court then ordered Plaintiff

to show cause as to why her case should not be dismissed now that Defendants had

tendered her final paycheck.  [Doc. 26 at 1]  On August 27, 2018, Plaintiff filed her

response to the court's Order to Show Cause, coupling it with a Motion for

Reconsideration of Plaintiff's Motion to Approve Settlement.  [Doc. 28 at 1-14]  In

short, Plaintiff requested that the district court approve the settlement terms which

she argued were previously agreed upon by the parties on July 11th.  [*Id.* at 8; Doc.

18-1 at 1, 3]

### E.  The District Court Approves the Parties' Settlement and Refers Plaintiff's Motion for Attorney's Fees to the Magistrate Judge

On September 17, 2018, the Court formally approved the parties' settlement

as outlined in Plaintiff's Motion for Reconsideration, retained jurisdiction to

enforce its terms and determine a reasonable attorney's fee, and dismissed the case.

[Doc. 29 at 1; Doc. 28 at 8]  In doing so, Plaintiff became the "prevailing party" in her FLSA action.  *See Am. Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1319–21 (11th Cir. 2002) (holding that the district court's approval of the terms of the settlement coupled with its explicit retention of jurisdiction to enforce its terms is sufficient to render the plaintiff a prevailing party).  Pursuant to the district court's order, [Doc. 29 at 1], Plaintiff filed her Motion for Attorney's Fees, requesting $10,675 in fees for the 30.5 hours Kozolchyk claimed to have expended litigating the case.  [Doc. 30 at 1, 7]  The district court referred Plaintiff's Motion for Attorney's Fees to the magistrate judge for a Report and Recommendation ("R&R").  [Doc. 31 at 1]  The magistrate judge subsequently filed his R&R.

### F.      The Magistrate Judge's Report and Recommendation

While acknowledging the general requirement that prevailing plaintiffs in FLSA actions receive some award of attorney's fees, the magistrate judge recommended that the Court deny Plaintiff's motion and award her no attorney's fees.  [*Id.* at 120]  The magistrate judge based his recommendation on his determination that "it would be 'unreasonable, unjust, and inequitable to award Plaintiff any fees' in these circumstances."  [Doc. 37 at 11]  Specifically, the magistrate judge found that (i) Defendants timely issued and mailed Plaintiff her final paycheck to the address she provided, (ii) Kozolchyk made no effort to contact Defendants to inform them that Plaintiff had not received her check before

suing, and (iii) had he done so, he would have discovered that Defendants had sent

Plaintiff's paycheck to her address and were willing to immediately issue another.

[*Id.* at 5, 10-11]  Based on these findings, the magistrate judge concluded that the

case was a "prototypical 'nuisance suit'" involving nothing more than a lost

paycheck which Kozolchyk could have resolved by placing a brief phone call to

Defendants.  [*Id.* at 1, 10]  Accordingly, the magistrate judge deemed Plaintiff's

fee demands to be "excessive relative to the minimal work [i.e., a brief phone call]

necessary to resolve the matter and make his client whole."  [*Id.* at 10]

The magistrate judge reasoned that Kozolchyk's failure to contact

Defendants prior to filing resulted in an expenditure of judicial time and resources

on litigation that was entirely unnecessary.  [*Id.* at 11]  While the magistrate judge

acknowledged that pre-filing notice is not a statutory prerequisite for receiving

attorney's fees under the FLSA, he concluded that Kozolchyk was not absolved of

his obligation, as an officer of the court, to avoid unnecessary litigation.  [Doc. 37

at 10]  Additionally, the magistrate judge determined that although defendant

Eckert "made every reasonable effort to resolve the matter" after learning of the

suit, Kozolchyk "rebuffed" these efforts by continuing to demand attorney's fees.

[*Id.* at 10-11]  The magistrate judge emphasized that Kozolchyk refused to accept

Defendant Eckert's May 25, 2018 offer to re-cut Plaintiff's paycheck, even though

at that point he had only filed a three-page complaint.  Furthermore, the magistrate

judge noted that Kozolchyk failed to respond to defendant Eckert's June 13, 2018

offer to pay the entire amount claimed plus any costs, waiting until July 9, 2018—

when a court deadline for selection of a mediator was imminent—to send an email

"refusing to settle the case without payment of his attorney's fees."

In justifying his recommendation not to award Plaintiff any attorney's fees,

the magistrate judge relied, in part, on our decision in *Sahyers v. Prugh, Holliday*

*& Karatinos, P.L.*, 560 F.3d 1241 (11th Cir. 2009).  [*Id.*]  In *Sahyers*, discussed in

more detail below, we affirmed a district court's denial of attorney's fees to a

prevailing FLSA plaintiff because her counsel filed a lawsuit without contacting

the prospective defendants to resolve the matter extra-judicially.  *Id.* at 1245.

Among other reasons, we concluded that the district court's inherent powers

justified its decision not to reward, with an award of attorney's fees, a lawyer who

had so wasted judicial time and resources.  *Id.* at 1244–45.

The magistrate judge also explained that "[d]espite the statutory requirement

that attorney's fees be awarded to prevailing plaintiffs in FLSA cases, courts

recognize 'special circumstances' that can render an award of attorney's fees

unjust, and so-called nuisance settlements present such a circumstance."  [*Id.* at 6]

Specifically, he cited the Eighth Circuit's decision in *Tyler v. Corner Construction*

*Corp.*, 167 F.3d 1202, 1206 (8th Cir. 1999) (explaining that a nuisance settlement

is a settlement "that is accepted despite the fact that the case against the defendant

is frivolous or groundless, solely in an effort to avoid the expense of litigation"),

and two cases brought in the Southern District of Florida, in which the court denied

attorney's fees to prevailing FLSA plaintiffs. *See Goss v. Killian Oaks House of*

*Learning*, 248 F. Supp. 2d 1162, 1168–69 (S.D. Fla. 2003) (applying the nuisance

settlement exception identified in *Tyler* to deny fees in an FLSA action); *Nelson v.*

*Kobi Karp Architecture & Interior Design, Inc.*, No. 17-23600, 2018 WL 3059980,

at **2–3 (S.D. Fla. May 8, 2018) (Seitz, J.) (a case in which Kozolchyk was also

plaintiff's counsel and was denied any attorney's fees).  [*Id.* at 6-9]

### G.    The District Court Affirms and Adopts the Magistrate Judge's Report and Recommendation

In a summary order adopting the factual determinations and legal

conclusions contained in the R&R, and rejecting Plaintiff's objections, the district

court approved the magistrate judge's R&R denying Plaintiff's motion for

attorney's fees in its entirety.  [Docs. 38, 40]  Notably, in her objections to the

R&R, Plaintiff had filed an affidavit averring that on the day after being fired, she

had telephoned someone in Defendants' payroll department to request her last

check.  According to Plaintiff, that person stated that Plaintiff would be paid via a

direct deposit.  [Doc. 38-1 at 2]  And, in fact, direct deposit was the means by

which Defendants had provided pay for Plaintiff's first week's work.  [*Id.* at 1]

But three days later, with no direct deposit having yet occurred, Plaintiff again

called Defendants' office and spoke to the receptionist, who "said that Dr. Eckert

was not going to pay [her]." [*Id*. at 2]  Plaintiff likewise averred that she never

received the February 8 check that Defendants claims to have mailed her.  [*Id*.]

Shortly thereafter, Plaintiff retained Kozolchyk.

The district court did not address the above allegations in its order denying

attorney's fees.  And, as earlier noted, Defendants had not provided an affidavit

supporting their own allegations regarding the issuance of a check to Plaintiff.

Thereafter, Plaintiff timely filed the present appeal of the district court's order

denying attorney's fees.  [Doc. 41]

## II.    STANDARD OF REVIEW

"We review a district court's decision whether to award attorney's fees and

costs for abuse of discretion."  *Dionne v. Floormasters Enters., Inc.*, 667 F.3d

1199, 1203 (11th Cir. 2012).  We will not set aside the district court's

determination of what fee is reasonable pursuant to § 216(b) of the FLSA absent a

"clear abuse of discretion."  *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541,

1543 (11th Cir. 1985)*.*  An abuse of discretion occurs if the judge fails to apply the

proper legal standard, follows improper procedures, or bases an award of

attorney's fees upon findings of fact that are clearly erroneous.  *In re Red Carpet

Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir. 1990).  We review

questions of law *de novo* and factual findings for clear error.  *See Bivins v. Wrap it*

*Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008); *Atlanta Journal & Constitution v.
City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th Cir. 2006).

## III.   DISCUSSION

Plaintiff argues that, as the prevailing party, the FLSA indicates that she is
entitled to a reasonable attorney's fee.  She is right about that.  No one disagrees
that she is the prevailing party nor that the FLSA so provides.  *See* 29 U.S.C.
§ 216(b) ("The court in such action shall, in addition to any judgment awarded to
the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the
defendant, and costs of the action.").  The key word for purposes of this appeal,
however, is the word "reasonable."  Determining a "reasonable" fee under the
FLSA "is left to the sound discretion of the trial judge."  *Kreager*, 775 F.2d at
1543.  And our own precedent has indicated that, at least in the FLSA context,
there are some cases where a reasonable fee award is zero.  *See Sahyers v. Prugh,
Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009).

### A.   District Court Cases

The question then is whether the district court abused its discretion when it
concluded that a reasonable fee in this case was no fee.  And to figure that out, it is
helpful to identify any guidance provided by analogous caselaw.  On that score,
district courts within our Circuit have dealt with fact patterns somewhat similar to
what Defendants argue, and the magistrate judge agreed, are the facts here.

Specifically, an employee leaves her job—often abruptly—with a small amount of

money owed for unpaid wages.  Instead of thereafter contacting her employer to

alert the latter that she has not yet received payment of any unpaid wages, the

employee hires a lawyer.  Then, instead of contacting the employer to quickly

resolve the matter—or directing the former employee to first do so—the attorney

files an FLSA federal lawsuit:  a lawsuit whose $400 filing fee, alone, will often

exceed the money owed to the employee.  Once aware of litigation, the employer

then immediately tries to rectify the situation by getting to the employee her last

check.  But instead of a speedy resolution, the litigation drags on because the

employee's attorney insists on attorney's fees in an excessive amount that the

employer rejects.  The employer's rejection results in continuing emails and

communications back and forth, meaning that as long as plaintiff's counsel can

keep this give-and-take going, his attorney's fees continue to rise, which then

further discourages a settlement.  And so it goes.

The seminal district court case—and the one often cited by district courts

who decide to award either no attorney's fees or sharply reduced fees in these

types of FLSA suits—is *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d

1162 (S.D. Fla. 2003) (Moreno, J.).  There the plaintiff-employee had been fired

for improper conduct after working less than two weeks for the defendant-

employer.  *Id.* at 1164.  Owed two days' pay, she was told to pick up her check but

refused to do so.  *Id.*  Instead, she hired a lawyer and sued the employer for failure

to pay her the wages in question.  *Id.*  Soon thereafter, the employer attempted to

ascertain the amount of her claim in order to resolve the matter.  *Id.* at 1165.  Her

counsel refused to provide details of her claim and instead insisted on formal

discovery.  *Id.*  The employer repeatedly sought to ascertain the amount of the

claim in order to resolve it and to cease incurring any more attorney's fees.  *Id.*

Plaintiff's counsel was unresponsive.  *Id.*  Nevertheless, the employer tendered the

$137.03 owed to the plaintiff.[5]  *Id.*

The case then proceeded to a determination of reasonable attorney's fees by

the district court.  *Id.* at 1167.  Plaintiff's counsel asked for over $16,000 in fees

for a case that was settled for a little over $300.  *Id.* at 1167–68.  The court noted

that notwithstanding the FLSA's provision for a mandatory award of attorney's

fees for a prevailing plaintiff, "an entitlement to attorney's fees cannot be a *carte*

*blanche* license for Plaintiffs to outrageously and in bad faith run up attorney fees

without any threat of sanction."  *Id*. at 1168.  And in the case before it, the district

court observed that counsel's "behavior casts doubt on his insistence that all fees

were reasonable," as he continued to litigate a matter "that could have been

---

[5]  At this point, plaintiff's counsel then asserted that the employer owed plaintiff money for
overtime, but provided no specifics about the claim.  *Id.*  Albeit denying that it owed anything on
this claim, but to resolve litigation that stood to be more expensive than just paying the employee
the small amount of money that she sought, the employer cut a check for the maximum potential
amount of overtime that could possibly be claimed for the employee's short tenure.  *Id.*

disposed of by making a few phone calls before filing suit." *Id*. Moreover, the

meager damages paid by the employer represented "a nuisance settlement that was

made solely in an effort to avoid the expense of litigation" and after the employer

had "attempted to resolve the case numerous times in an effort to avoid precisely

the grossly excessive fee requests that are present in this case." *Id*.

The district court concluded that there are "special circumstances" that can

render the award of any attorney's fees unjust and that "so-called nuisance

settlements represent such a circumstance." *Id*. Indeed, the court concluded that

counsel had "leveraged a small sum as a stepping-stone to a disproportionately

large award of attorney's fees" by "continuously employ[ing] a strategy of delay

and obfuscation . . . to ward off the inevitable resolution of the case." *Id*.

Counsel's litigation activity was "calculated to 'churn' the file and extract as much

attorney's fees as possible from . . . a modest claim not deserving of the many

hours of work." *Id*. at 1168–69. Concluding that counsel had pursued a "strategy

of 'shaking down' Defendants with nightmarishly expensive litigation solely in

pursuit of attorney's fees" and that such conduct "must not be rewarded," the court

awarded no attorney's fees. *Id*. at 1169. Its bottom line: "[T]he suit was frivolous

in the first instance and Plaintiff's counsel grossly exaggerated the amount of hours

expended." *Id*.

Subsequent district courts have relied on *Goss* to disallow any attorney's

fees to plaintiff's counsel in analogous FLSA cases.  For example, in *Nelson v.*

*Kobi Karp Architecture & Interior Design, Inc.*, No. 17-23600, 2018 WL 3059980

(S.D. Fla. May 8, 2018) (Seitz, J.), the court denied in its entirety a fee request by

counsel in this case, Mr. Kozolchyk.  *Id.* at *3.  In that case, the plaintiff-employee

had sued under the FLSA for two days of unpaid wages, worth $116, and after

settlement, Kozolchyk had sought over $9,000 in attorney's fees.  *Id.* at **1–2.

The defendant-employer opposed the imposition of any attorney's fees, arguing

that counsel had refused early settlement in an attempt to run up attorney's fees.

*Id.* at **2–3.

Acknowledging that the FLSA provides for the award of reasonable fees, the

district court noted that there are cases where a reasonable fee is no fee, and it

found that *Nelson* was one of those cases.  *Id.* at *2.  As to the facts, the court

noted that prior to filing suit, neither the plaintiff nor her counsel attempted to

reach out to the employer defendants to resolve the matter, which was significant

as there was no evidence that the plaintiff-employee had submitted to her employer

the paperwork required for payment.  *Id*. at *1.  Once suit was filed, the employer

immediately tried to resolve the matter by paying the small amount of money at

issue, plus $1,500 in attorney's fees and costs, even though at the time Mr.

Kozolchyk had spent less than 4 hours on the case.  *Id.*  Kozolchyk declined.  *Id*.

The employer, through counsel, then physically tendered the money in question and offered $2,000 in fees and costs, but Kozolchyk again refused to settle for this amount of attorney's fees. *Id.* at **1, 3. The district court noted that of the 25.8 hours ultimately claimed by Kozolchyk, 17.7 of these hours were incurred after his receipt of the checks in full payment of damages. *Id*. at **2–3.

In awarding Kozolchyk no fees at all, the district court noted that the plaintiff had made no attempt to resolve the matter prior to filing suit, albeit the court also acknowledged that the FLSA does not require pre-suit notice or demand. *Id.* at *3 & n.2. More significantly, the court concluded that Kozolchyk's rejection of the employer's offer of $2,000 in fees and his insistence on fees of $3,000 was unreasonable and would have created a windfall for him, given that, at best, his fees totaled only $1,260 based on his own records. *Id.* at *3. That being so, the court concluded that Kozolchyk's "sole intent [at that point] was to run up his bill." *Id.* Accordingly, the district court found it "unreasonable, unjust, and inequitable to award Plaintiff any fees." *Id.*

Likewise, in *Olguin v. Florida's Ultimate Heavy Hauling*, No. 17-61756, 2019 WL 3426539 (S.D. Fla. June 5, 2019) (Goodman, J.), another FLSA action, the magistrate judge denied Mr. Kozolchyk any attorney's fees,[6] stating:

---

[6] The district court adopted the magistrate judge's recommendation. [17-cv-61756-MCG, S.D. Fla., Doc. 110 (July 23, 2019)]

> [T]his lawsuit (which quickly morphed from an extremely small claim
> worthy of a telephone call into a full-fledged litigation war) should
> never have been a lawsuit in the first place.  But, once filed, this lawsuit
> should have been quickly and inexpensively resolved.  It wasn't.
> Indeed, what should have been, at *most*, a modest, manageable, garden-
> variety squabble under the Fair Labor Standards Act involving a claim
> of less than $1,000 and a settlement of $783 . . . mushroomed into a
> full-scale, pedal-to-the metal litigation war and an epic battle over
> attorney's fees.

*Id*. at *1 (emphasis in original).  As to the underlying facts, the court noted that,

because the plaintiff-employee "abandoned his position mid-work week, his

automatic payroll deposit for a full-week's salary was reversed and a check [in the

appropriate amount] was prepared and made available to him" eleven days before

suit was filed.  *Id.* at *4.  Nevertheless, the plaintiff never retrieved his final

paycheck.  *Id.*  The court noted that Kozolchyk never asked the employer about the

status of the plaintiff's final paycheck before filing suit, nor ever indicated why he

did not do so.  *Id.*  After the filing of the suit, the employer unconditionally

tendered to Kozolchyk all the wages requested by the plaintiff, but Kozolchyk

refused to accept the tendered paycheck.  *Id*. at **5, 19.  Lengthy litigation then

ensued on a separate overtime claim that Kozolchyk abandoned, and later

dismissed with prejudice, after putting the defendants to the burden of answering

discovery and filing a summary judgment motion.  *Id*. at **5, 10.

Ultimately, the parties settled the remaining minimum wage claim for which

the employer had long before tendered a check.  *Id.* at 6.  Plaintiff sought

attorney's fees of over $36,000.  *Id.* at *1.  In declining to award him any fees,[7] the

district court noted that Plaintiff had settled for an amount far less than the initial

demand (which included both the minimum wage and the overtime claim); that the

claim "largely involved an administrative scenario generated by the simple fact

that Plaintiff ended his employment in the middle of the week"; that neither the

plaintiff nor Kozolchyk had contacted the employer to see if the dispute could be

amicably and quickly resolved without the need for a lawsuit; and that Kozolchyk

had failed to exercise due diligence to determine that the plaintiff was exempt from

any overtime requirement imposed by the FLSA.  *Id.* at *14.

      Based on the above conduct, the court concluded that "Kozolchyk's focus on

his own fees is the only logical explanation for the failure to accept Defendants'

tender of the check for payment" of the minimum wage claim.  *Id.*  Further, the

court determined that "Kozolchyk's actions seem designed to perpetuate the

litigation, rather than to reach a just, efficient, and timely result for his client.  In

other words . . . the Undersigned finds that his conduct was part of a strategy to

churn the file and create unnecessary attorney's fees."  *Id*.  Further, "the requested

amount of fees is grossly lopsided when compared to both the amount in

controversy and the final settlement."  *Id.*

---

[7]  In addition, the court required Kozolchyk to pay over $30,000 in attorney's fees to the
defendants as a sanction imposed pursuant to 28 U.S.C. § 1927 based on Kozolchyk's bad faith
with regard to the abandoned overtime claim.  *Id.* at *15.

On the other hand, not all district court cases with analogous facts have resulted in a decision to award no attorney's fees to the FLSA plaintiff's attorney. In another case involving Mr. Kozolchyk, *Johnson v. Southern Florida Paving Group*, No. 16-CV-62689, 2020 WL 5113592 (S.D. Fla. Aug. 31, 2020) (Valle, J.), the magistrate judge rejected the defense's request to award no attorney's fees, although the judge did reduce those fees. *Id.* at **2, 7. There, even though under the settlement agreement the plaintiff-employee had recovered only $350 for unpaid wages (with an equivalent amount added for liquidated damages), Kozolchyk requested $10,320 in attorney's fees. *Id.* at *1. The bulk of those fees had been generated as a result of the parties' inability to agree on the proper amount of attorney's fees. *See id.* at **2, 4.

Relying on our decision in *Sahyers* as one ground for denying Kozolchyk any fees, the defendant argued that Kozolchyk should have first made a pre-suit demand and that, had that happened, the matter would have been quickly resolved. *Id*. at *2. The magistrate judge made quick work of that argument, noting that, by its own terms, *Sahyers* was based on the ethical duty of civility within the legal profession and was limited to a scenario in which a plaintiff's lawyer had sued other lawyers for an FLSA violation without first giving pre-suit notice. *Id*. at **2–3. The court likewise distinguished the case before it from other cases that had denied fees to the FLSA plaintiff's counsel. Specifically, the magistrate judge

noted that in those cases the defendants had made multiple offers to settle, whereas

other than demanding that the plaintiff voluntarily dismiss the action, the

defendants before her had made no effort to settle the case until mediation.  *Id.* at

*3.  Likewise, in the other cases, the defendants had either tendered or tried to

tender payment of the claimed wages:  a gesture that did not occur in the present

case.  *Id.* at *4.  Finally, Kozolchyk did not request excessive attorney's fees prior

to settlement, meaning that it was not reasonable to assume that Kozolchyk was

protracting the litigation in order to churn his legal fees.  *Id.*  Given the absence of

any effort to tender payment of the plaintiff's claim, counsel could not be faulted

for continuing to litigate.  *Id*.

In short, the court found no "special circumstances" that would warrant a

total denial of counsel's fees.  *Id*.  That said, and noting its duty to determine

whether a requested fee is reasonable, the court held that a reduction of Mr.

Kozolchyk's requested fees was necessary.  *Id.* at *5.  Concluding that a fee award

of over $10,000 would be greatly disproportionate given "the straightforwardness

and mundaneness of the issues" and the fact that the damages were valued at only

$350, the court reduced the fees by 35%.  *Id*. at **6–7.

In *Munoz v. Kobi Karp Arch. & Interior*, No. 09-21273, 2010 WL 2243795

(S.D. Fla. May 13, 2010) (Simonton, J.), the magistrate judge rejected the

defendant's argument that the plaintiff was entitled to no attorney's fees following

the settlement of his FLSA claim for unpaid overtime.  *Id.* at *3.  First, the court

noted that, contrary to defendant's contention, the plaintiff was not required to give

notice prior to initiating the action.  *Id.* at *3 n.1.  Further, the settlement was not

for a *de minimis* amount in damages nor did plaintiff's counsel delay resolution of

the case in order to "drive up" attorney's fees.  *Id.* at **3–4.  Distinguishing *Goss*,

the court noted that the damages paid in the case before it did not constitute a

"nuisance settlement"; that there was not the striking disparity between the

recovery ($2,384.28) and the requested attorney's fees ($5,277.50), as was present

in *Goss*; and that plaintiff's counsel had been cooperative in responding to the

defendant's request for more information about the amount the plaintiff claimed to

be owed.  *Id.* at **1, 4.  The court did, however, decide that the matter could have

been resolved "in a more expeditious and less costly manner," and it therefore

reduced plaintiff's requested attorney's fees by approximately 20%.  *Id.* at **3, 9.

###     B.     Analysis

As set out above, a prevailing plaintiff in an FLSA action is entitled to

reasonable attorney's fees.  Notwithstanding that entitlement, our Court in *Sahyers*

recognized the possibility that, in an appropriate circumstance, a reasonable fee

may be no fee at all.  *Sahyers*, 560 F.3d at 1244.  The question before us is whether

the district court abused its discretion in ruling that the circumstances of the

present case supported its decision to award no fees to Plaintiff's counsel, Elliott

Kozolchyk.  Also as noted above, an abuse of discretion occurs if the judge fails to apply the proper legal standard, follows improper procedures, or bases an award of attorney's fees upon findings of fact that are clearly erroneous.  *Red Carpet Corp.*, 902 F.2d at 890.

As to the reasons offered by the magistrate judge for his recommendation to award no fees,[8] the judge acknowledged that attorney's fees should be awarded to a prevailing plaintiff absent "special circumstances."  And citing to the discussion in *Goss*, the court identified, as a potential special circumstance, a "nuisance settlement," which it defined as a settlement that a defendant accedes to, despite the fact that the case against the defendant is frivolous or groundless, "solely in an effort to avoid the expense of litigation."  [Doc. 37 at 6]  The judge also relied on the district court decision in *Nelson*, noting that the facts present in it and *Goss* were very similar to the facts in the present case, including the fact that in each case Kozolchyk had been the attorney.  [*Id*. at 9]

As to the specific faults the magistrate judge laid at the feet of Kozolchyk, the court stated that Kozolchyk had made no effort to contact Defendants before filing suit and that had he done so, "he would have discovered that Defendants had actually sent to his client's address the paycheck she was owed and, further, that

---

[8]  As noted above, the district court judge adopted in a summary order the magistrate judge's R&R.

they were willing to immediately cut another check." [*Id.* at 10]  Repeating this concern, the R&R stated, "At all times this case has involved a lost paycheck—nothing more . . . . Plaintiff and/or her counsel could have resolved this matter simply by placing a brief telephone call to Defendants and without the need to file suit.  The fact that the FLSA does not impose a pre-filing notice requirement does not absolve counsel of his obligation as an officer of the court to avoid unnecessary litigation." [*Id.*]

The magistrate judge also considered Kozolchyk's conduct after filing the lawsuit to be blameworthy.  Although Defendants offered to immediately cut a new check for Plaintiff, Kozolchyk responded with fee demands that the court considered to be excessive.  Specifically, the magistrate judge noted that Kozolchyk's initial attorney's fee demands during his first contacts with defendant Eckhart were excessive relative to the work performed, as Kozolchyk first demanded a fee of $3,200, and then $2,750—these demands being made at a time when he had only filed a three-page skeletal complaint, a quarter-page statement of claim, and a one-paragraph request for appointment of a mediator. [*Id.* at 11]  Ultimately, Kozolchyk asked the court to award him attorney's fees in the amount of $10,675—the bulk of these fees having been generated by the sparring between Kozolchyk and Defendants over the appropriate amount of attorney's fees.  The

court concluded that as in *Nelson*, under all the circumstances, "it would be unreasonable, unjust, and inequitable to award Plaintiff any fees." [*Id*.]

As to the failure of the plaintiff's counsel to notify an employer of a potential claim prior to filing suit, the magistrate judge acknowledged that the FLSA does not require such notice. And that observation is, of course, accurate. It is true that in *Sahyers* we held that the absence of such notice supported the district court's denial of any attorney's fees in the FLSA case before it. But that holding, based on a trial court's inherent authority to require civility and collegiality by attorneys appearing before it, was limited to the particular facts before our court: an FLSA suit filed against fellow attorneys as defendants. *Sahyers*, 560 F.3d at 1245.[9] Indeed, we added a strong caveat warning against a broad application of this principle in other contexts:

> We strongly caution against inferring too much from our decision today. These kinds of decisions are fact-intensive. We put aside cases in which lawyers are not parties. We do not say that pre-suit notice is usually required or even often required under the FLSA to receive an award of attorney's fees or costs. . . . We conclude only that the district court did not abuse its discretion in declining to award some attorney's fees and costs based on the facts of this case.

*Id*. at 1246.

---

[9] "[T]his conscious disregard for lawyer-to-lawyer collegiality and civility caused (among other things) the judiciary to waste significant time and resources on unnecessary litigation and stood in stark contrast to the behavior expected of an officer of the court. The district court refused to reward—and thereby to encourage—uncivil conduct by awarding Plaintiff attorney's fee or costs." *Sahyers*, 560 F.3d at 1245 (footnote omitted).

The absence of any pre-filing inquiry by counsel, however, was ancillary to the factor that most strongly motivated the district court's decision:  "<u>At all times this case has involved a lost paycheck—nothing more</u> . . . . Plaintiff and/or her counsel could have resolved this matter simply by placing a brief telephone call to Defendants and without the need to file suit."  (emphasis added).  [*Id.* at 10]  In other words, litigation in which the defendant-employer has done what it should reasonably do to get payment to a former employee, but in which the employee or her attorney has made no pre-suit effort to inform the employer that the payment was never received creates a scenario fitting into the magistrate judge's "nuisance litigation" category.  For example, in *Goss*, the employer had the former employee's check ready for her, but she simply chose not to pick it up.  *Goss*, 248 F. Supp. 2d at 1164.  Instead, she and her attorney decided to sue so that she could not only get the unretrieved check that she had refused to pick up, but also receive liquidated damages as well as gain attorney's fees for a totally unwarranted lawsuit.  *Id.* at 1164–65.  As the *Goss* court noted, such conduct indicated that the sole basis of the litigation was to gain attorney's fees and that such bad faith by an attorney should not be rewarded with fees.  *Id.* at 1168–69.  *Cf. Malden v. Wings Over Emerald Coast,* Case No. 18-CV-260, 2019 WL 1245866 at *7 (N.D. Fla. Feb. 20, 2019) (although the FLSA does not require pre-filing written notification, an attorney is always subject to Federal Rule of Civil Procedure Rule 11(b)(1),

which obliges a lawyer to make reasonable inquiry into the facts underlying a claim).

But as described by the magistrate judge, nuisance litigation is characterized not only by the extortionate nature of the action—litigation over a small amount of damages that will subject the putative defendant to exorbitant legal costs absent a settlement—but also by the frivolity and groundless nature of the claim.  Here, the court clearly found that the present claim was groundless, and it was this finding that was the primary impetus for the court's decision to disallow attorney's fees in their entirety.  That is, the magistrate judge concluded that Defendants had, in fact, mailed a final check to Plaintiff at the address she had provided and that it was up to Plaintiff or her attorney to advise Defendants that she had not received this check that she understood they would be remitting to her.  As the magistrate judge reasoned, regardless of the fact that the FLSA fails to require written pretrial notice, it is incumbent on an attorney to exercise some diligence before filing a legal action, with counsel's legal fees in peril if it turns out that the employer was faultless and that a simple inquiry would have so indicated.

Essential to the conclusion reached by the magistrate judge was his belief that the employer had mailed a check to Plaintiff and thereby done what it was supposed to do.  Yet, to withstand challenge, a factual finding by a court has to be supported by evidence.  And that is the problem here.  As noted in her objections

to the R&R, Plaintiff disputed the accuracy of the magistrate judge's finding, filing

an affidavit averring that she had indeed telephoned Defendants' office to request

her check, but had been told she would not be paid.  As to the accuracy of

Defendants' allegation that they had mailed her a check, she averred that the only

other payment she had previously received from Defendant was via a direct deposit

and, in fact, that in an earlier call to the payroll department, she had been told that

she would be paid via direct deposit.  Moreover, shortly after the case had been

filed, Defendants' corporate counsel stated in an email to Kozolchyk that Dr.

Eckert had explained, "[T]here was a miscommunication with the payment," [Doc.

36-3] not that a check had actually been mailed.  Finally, Plaintiff averred that she

had never received the check that Defendants claimed to have mailed to her, albeit

she was living at the address to which their check was purportedly sent.

In fairness to the magistrate judge, the above allegations were made by

Plaintiff via her objections to the R&R—an event that by definition occurred only

after the magistrate judge had issued the R&R.  Thus, he had no occasion to

resolve the dispute.  Yet, as Defendants had never supported their factual position

with an affidavit, their assertions were likewise insufficient to create an adequate

evidentiary basis for findings that Plaintiff ultimately contested.

Because the primary basis of the R&R's conclusion that no attorney's fees

should be awarded is the finding that Defendants had actually mailed a final check

to Plaintiff prior to her lawsuit, we remand this case to the district court to address

that and all related issues and to consider anew the question of attorney's fees.  Of

course, if the district court determines on remand that the record will not support a

total denial of attorney's fees, the court will still need to determine what is a

reasonable amount of fees under all the circumstances.  That examination will

necessarily involve an assessment of the relative reasonableness of each party's

actions during the tedious negotiation process, including the extent to which

counsel Kozolchyk had initially requested exorbitant fees, which request

Defendants argue was the unreasonable act that prompted ensuing negotiations and

triggered the additional expense that Kozolchyk now tries to reap.[10]

## IV.   CONCLUSION

For the reasons explained above, the case is **REVERSED** and

**REMANDED** to the district court for proceedings consistent with this opinion.

---

[10]  As noted, at this early stage of communications, in which Kozolchyk had filed only a short, uncomplicated complaint, Defendant Eckert offered $1,100 in fees, which offer was not accepted by Kozolchyk.

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 01, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-10133-GG
Case Style:  Mitzy Batista v. South Florida Womans Health, et al
District Court Docket No:  0:18-cv-61075-FAM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joseph Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion